**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

In re:

**GERARDO LORENZO LINARDUCCI,**          **Case No. 25-03768-JMC-13**

      **Debtor.**

_____/


**RECEIVER'S SUPPLEMENTAL BRIEF IN SUPPORT OF STAY RELIEF**
**MOTION (DOC. 77) REGARDING LEGAL BASES FOR CLAIMS,**
**STANDING OF RECEIVER, AND EFFECT OF BANKRUPTCY**
**ON THE RECEIVER'S CONSTRUCTIVE TRUST REMEDY**

      Kenneth D. Murena, Esq., the court-appointed Receiver ("Receiver") of Drive Planning LLC ("Drive Planning"), files his brief regarding the legal bases for his claims to recover real property purchased and commissions paid by Drive Planning, the Receiver's standing to pursue those claims, and the effect of the bankruptcy filing on the Receiver's constructive trust remedy.[1]

---

[1] This supplemental brief is filed in further support of the Receiver's Motion for Relief from Automatic Stay (Doc. 77) pursuant to the Court's docket entry on January 29, 2026 (Doc. 94).

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES..................................................................................... iii

INTRODUCTION ................................................................................................... 2

I.    Legal Bases for Claims to Recover Property and Commissions ................................... 5

    A.  Legal Bases for Claim to Recover Property [POC No. 26],
        Objection to Claimed Exemption in Residence [Doc. 61],
        and Motion for Relief from Automatic Stay [Doc. 77] ........................................... 6

        *1.  Receivership Order* ................................................................................. 6

        *2.  Common Law – Constructive Trust* ................................................................. 7

    B.  Legal Bases for Claims to Recover Commissions [POC No. 25],
        Objection to Confirmation of Debtor's Chapter 13 Plan [Doc. 45],
        and Adversary Proceeding to Except Debts from Discharge Pursuant
        to 11 U.S.C. § 523 [Adv. No. 25-50110] ........................................................ 8

II.   Standing and Jurisdiction: The Receiver Has Standing to Assert
       Claims to Recover the Property and the Commissions Debtor
       Received from Drive Planning, and the Receivership Court Has
       Exclusive Jurisdiction Over Receivership Property ................................................ 10

    A.  The Receiver Has Standing to Seek Recovery of the Property Pursuant
        to the Receivership Order ........................................................................ 10

    B.  The Receiver Has Standing to Pursue Fraudulent Transfer and
        Unjust Enrichment Claims Against the Debtor Because He
        Is Not Asserting Claims on Behalf of Investors, but on Behalf of
        the Drive Planning Receivership Estate, as a Creditor of Drive
        Planning, Which Made the Transfers to the Debtor ................................................ 11

    C.  The Receivership Court Has Jurisdiction Over the Property ................................. 13

III.  The Debtor's Bankruptcy Filing has No Impact on the Receiver's Constructive
       Trust Remedy ...................................................................................... 15
    A.  It is not disputed that proceeds of the Drive Planning Ponzi scheme
        were fraudulently diverted to, and are directly traceable to,
        the Property ...................................................................................... 16

    B.  Summary of Indiana law on constructive trusts ................................................ 16

C.  Property obtained by fraud does not become property of the
    bankruptcy estate ................................................................................. 17

D.  *Eastern Livestock* is easily distinguishable and, to the extent
    inconsistent with *Mississippi Valley*, superseded ................................... 19

E.  It is irrelevant whether an order recognizing that the Property is held
    in constructive trust is entered before or after the petition date............................. 20

F.  The Receiver's ownership interest in the house is not avoidable
    under 11 U.S.C. § 544(a)(3)..................................................................... 22

G.  Conclusion ........................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beecher v. City of Terre Haute*, 235 Ind. 180, 184-85, 132 N.E.2d 141, 143
    (1956) ................................................................................................................. 7, 20

*Belisle v. Plunkett*, 877 F.2d 877 F.2d 512 (7th Cir. 1989) ......................................... 22

*Criss v. Bitzegaio*, 420 N.E.2d 1221, 1224 (Ind. 1981) ................................................. 7

*Dexia Crédit Local v. Rogan*, 629 F.3d 612, 630 (7th Cir. 2010) ................................... 7

*Friona Industries, L.P., et al. v. Eastern Livestock Co., LLC, et al.*, Case No. 10-93904-BHL-11,
    Adv. Pro No. 11-59093 .......................................................................... passim

*Geels v. Flottemesch*, 243 N.E.3d 1069, 1070 (Ind. 2024) ........................................ 16

*Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823 (6th Cir. 1981) ..................... 13, 14

*In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299 (7th Cir. 2014) ................. passim

*In re Nova Tool & Eng. Co.*, 228 B.R. 678, 683 (Bankr. N.D. Ind. 1998) ................... 18

*In Re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994) ...................................... 17, 18

*In re Teltronics, Ltd.*, 649 F.2d 1236 (7th Cir. 1981) ............................................ 22, 24

*Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296 (11th Cir. 2020) .................... 13

*Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990) ........................................... 7, 20

*Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962) ..................................... 19

*Presbytery of Ohio Valley, Inc. v. OPC, Inc.*, 973 N.E.2d 1099, 1109 (Ind. App. 2012) ............. 16

*Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) ..................................................... 12

*SEC v. Bilzerian*, 378 F.3d 1100, 1104 (D.C. Cir. 2004) ....................................... 13, 14

*Wiand v. ATC Brokers Ltd.*, 96 F.4th at 1308 .......................................................... 12

*Wiand v. Lee*, 753 F.3d 1194, 1202 (11th Cir. 2014) ..................................................11

**Statutes**

28 U.S.C. § 754 ................................................................................................ 7, 13, 14

28 U.S.C. § 1692 .................................................................................................. 13, 14

O.C.G.A. § 18-2-74(a) of Georgia's Uniform Voidable Transactions Act ........................... passim

**Other Authorities**

3 Norton Bankr. L. & Prac. 3d § 61:19 ...................................................................... 17

Andrew Kull, Restitution in Bankruptcy: Reclamation and Constructive Trust,

72 Am. Bankr. L.J. 265 (1998) .................................................................................. 18

Restatement (Third) of Restitution and Unjust Enrichment (2011) ............................... 21

Markell, Bruce A., Trust Me: Restitution, Constructive Trust and Mississippi Valley,

34 No. 5 Bankruptcy Law Letter (May 2024) at 6 ........................................................21

## INTRODUCTION

At the preliminary hearing held on January 29, 2026, on the Receiver's Motion for Relief from Automatic Stay [Doc. 77], the Court directed the Receiver to file a brief (i) explaining the legal basis for his claim to recover the Debtor's residence (the "Property") and his claim to recover the commissions the Debtor received from Drive Planning, (ii) establishing the Receiver's standing to pursue those claims, and (iii) addressing the effect of a bankruptcy filing on the Receiver's constructive trust remedy.

First, the legal basis for the Receiver's claim with respect to the Property [POC No. 26], Objection to Claimed Exemption in Residence [Doc. 61], and Motion for Relief from Automatic Stay [Doc. 77] include (a) the Order Appointing Receiver (the "Receivership Order"),[2] which establishes the Receivership Estate and recoverable assets of the Receivership Estate, and (b) common law constructive trust principles, restitution, and bankruptcy law.  The Receivership Order defines receivership assets to include property acquired with funds traceable to investors. The Property was purchased entirely with misappropriated Drive Planning investor funds.  Further, under well-established constructive trust law, a constructive trust is imposed by operation of law upon property acquired with fraudulently obtained funds at the time of the acquisition in favor of the defrauded parties.  And, under long-settled restitution and bankruptcy law, property acquired through fraud is not property of the bankruptcy estate.  While the Debtor holds bare legal title, the equitable ownership in the Property rests with the Receivership Estate, which was established well before the petition date for the benefit of defrauded investors whose funds were used to purchase the Property.   In particular, a constructive trust arose *by operation of law* at the moment investor

---

[2] On January 26, 2026, the Receiver filed his Declaration in Support of Receiver's Motion for Stay Relief (Doc. 93-1) (hereinafter, "Receiver's Declaration").  The Receivership Order is attached as Exhibit B (Doc. 93-3) to the Receiver's Declaration.

funds were fraudulently misappropriated and used to acquire the Property, such that equitable title never vested in the Debtor and, as such, the Property never became property of the bankruptcy estate. As a result, the Property is held in constructive trust for the benefit of the defrauded investors, and the Receivership Court, pursuant to the foregoing legal principles and the Receivership Order, has jurisdiction to determine that such Property constitutes an asset of the Receivership Estate. As such, cause exists to lift the stay so the Receivership Court may apply applicable law and enforce its Order by adjudicating title ownership and rightful possession of the Property.

The legal bases for the Receiver's claim to recover the nearly $6 million in commissions the Debtor received from Drive Planning for bringing investors into the Ponzi scheme [POC No. 25] include actual and constructive fraudulent transfer law established in O.C.G.A. § 18-2-74(a) of Georgia's Uniform Voidable Transactions Act ("GUVTA") and common law unjust enrichment.[3]

Second, the Receiver has standing to pursue recovery of the Property based on the Receivership Court's expressly directing the Receiver to marshal assets of the Receivership Estate and recover Receivership Assets as defined in the Receivership Order, which includes assets (such as the Property) acquired with investor funds.

Further, pursuant to widely adopted decisions of the Eleventh Circuit and the Seventh Circuit, a court-appointed receiver has standing to pursue actual and constructive fraudulent transfer claims under state fraudulent transfer law (including GUVTA) because a receivership estate (or the receivership entity) becomes a creditor of the pre-receivership entity that made the

---

[3] The Receiver's nearly $6 million claim against the Debtor for so-called "commissions" also renders the Debtor ineligible for Chapter 13 relief due to debt limits and makes it impossible for the Debtor to ever confirm a plan due to a lack of feasibility.

transfers and, as such, the receiver on behalf of the receivership estate (or the receivership entity) may pursue state law fraudulent transfer claims against the recipients of the transfers. Therefore, the Receiver, on behalf of the Drive Planning Receivership Estate (or Receivership entity Drive Planning), as a creditor of pre-receivership Drive Planning, which made the commission transfers to the Debtor, has standing to pursue actual and constructive fraudulent transfers claims, under GUVTA, against the Debtor who received those transfers.

Third, under well-established bankruptcy law, only a debtor's property interests as they exist on the petition date become part of the debtor's bankruptcy estate. Where property in the name of the debtor was acquired through fraud or other wrongful means, equity treats the debtor as holding only bare legal title, while equitable ownership remains with the party whose funds were misappropriated to purchase the property. That separation of legal title and equitable ownership occurs at the moment of the wrongful acquisition, not when a court later recognizes it. As a result, when a debtor holds only legal title to property purchased with wrongfully-obtained funds, the bankruptcy estate succeeds only to that limited interest and does not acquire the underlying equitable value of the property. Bankruptcy does not convert wrongful possession into ownership, nor does it permit the distribution of property that does not equitably belong to the debtor.

This Chapter 13 case is an attempt by the Debtor (i) to prevent the Receivership Estate of Drive Planning, in the context of an SEC enforcement action involving a $380 million Ponzi scheme, from recovering a nearly $2 million property directly purchased with funds from defrauded investors, and (ii) to avoid liability for the return of nearly $6 million in commissions received for luring investors into the fraud (and his direct liability based on fraud to those

investors).  To preserve the rights of the Receivership Estate for the benefit of those defrauded investors, the Court-appointed Receiver of Drive Planning filed:

> (A) two claims in this bankruptcy case – one to recover the Property [POC No. 26] and one to recover the commissions [POC No. 25];

> (B) an Objection to Confirmation of Debtor's Chapter 13 Plan [Doc. 45];

> (C) an Objection to Debtor's Claimed Exemption in Residence [Doc. 61];

> (D) a Motion for Relief from Automatic Stay [Doc. 77] to permit the Receiver to pursue in the SEC enforcement action his motion for turnover of, and to impose a constructive trust over, the Property; and

> (E) an Adversary Proceeding [Adv. No. 25-50110] to except from discharge the Debtor's debts to the Receivership Estate.

For the reasons set forth herein and in the foregoing filings by the Receiver, the Court should grant the Receiver's Motion for Relief from Automatic Stay [Doc. 77] to permit adjudication of the constructive trust and turnover issues in the Receivership Court, sustain the Receiver's Objection to Debtor's Claimed Exemption in Residence [Doc. 61], and sustain the Receiver's Objection to Confirmation of Debtor's Chapter 13 Plan [Doc. 45].

## I.   LEGAL BASES FOR CLAIMS TO RECOVER PROPERTY AND COMMISSIONS

The legal bases for the Receiver's claims against the Debtor are twofold and turn on the distinct nature of the assets at issue.  With respect to the Property purchased with Drive Planning investor funds, the Receiver's claims arise from (i) the scope of the Receivership Estate as defined by the Receivership Order, which expressly encompasses assets acquired with or traceable to investor funds, and (ii) common law constructive trust principles applicable to property obtained through fraud or other wrongful conduct.  By contrast, the Receiver's claims to recover the commissions paid to the Debtor are based on Georgia actual and constructive fraudulent transfer law, including O.C.G.A. § 18-2-74(a) of GUVTA, and principles of unjust enrichment.

**A. Legal Bases for Claim to Recover Property [POC No. 26], Objection to Claimed Exemption in Residence [Doc. 61], and Motion for Relief from Automatic Stay [Doc. 77]**

*1. The Receivership Order*

The Receivership Order expressly defines the scope of the Receivership Estate to include not only the assets of Drive Planning, but also assets that "are attributable to funds derived from investors," that "are held in constructive trust," and that otherwise constitute "Recoverable Assets." *See* Receiver's Declaration, Ex. B (Doc. 93-3) at 2. The Order further provides that the Receiver is appointed for the purpose of "marshaling and preserving all assets" falling within those categories and authorizes the Receiver to "sue for and collect, recover, receive and take into possession from third parties all Receivership Property," regardless of how such property is titled or held. *Id.* at 2, 4. Consistent with that mandate, the Order directs the Receiver to identify, take custody of, and recover property in which Drive Planning "owns, possesses, has a beneficial interest in, or controls directly or indirectly," including real property acquired with investor funds. *See id.* As a result, property purchased with misappropriated Drive Planning investor funds (such as the Property) falls squarely within the definition of Receivership Property and Recoverable Assets subject to recovery by the Receiver under the Receivership Order.

Here, the undisputed record establishes that the Property was purchased entirely with misappropriated Drive Planning investor funds. Because the Property was acquired directly with funds traceable to the Ponzi scheme, it falls squarely within the definition of receivership and recoverable property under the Receivership Order. The fact that the Property is titled in the name of the Debtor does not alter the Property's character as an asset traceable to investor funds, remove the constructive trust that was imposed upon it for the benefit of the defrauded investors whose funds were used to purchase it, divest the Receivership Court of jurisdiction over it pursuant to 28

U.S.C. § 754,[4] or nullify its mandate in the Receivership Order that the Receiver recover such an asset for the Receivership Estate.

Accordingly, the Receiver has standing and an affirmative duty under the Receivership Order to seek recovery of the Property, to object to any claimed exemption asserted in it, and to request relief from the automatic stay to permit the Receivership Court to enforce its Order by adjudicating ownership and possession of the Property.

### 2. Common Law – Constructive Trust

Independent of the Receivership Order, common law principles establish the Receiver's legal basis to seek imposition of a constructive trust over the Property. Under settled principles of equity, when property is acquired with fraudulently obtained funds, the recipient acquires only bare legal title, while equitable ownership remains with the party whose funds were misappropriated. *See Criss v. Bitzegaio*, 420 N.E.2d 1221, 1224 (Ind. 1981). As discussed in more detail below, a constructive trust arises by operation of law at the moment of the wrongful acquisition, not when a court later recognizes or enforces it. *See Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990) (*quoting Beecher v. City of Terre Haute*, 235 Ind. 180, 184-85, 132 N.E.2d 141, 143 (1956) (finding that constructive fraud "arises by operation of law from a course of conduct which, if sanctioned by law, would 'secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud.'"). The right to invoke a constructive trust belongs to the party entitled to assert that equitable interest. *See Dexia Crédit Local v. Rogan*, 629 F.3d 612, 630 (7th Cir. 2010) (explaining that a party seeking a constructive trust must demonstrate

---

[4] As required under 28 U.S.C. § 754 to extend the jurisdiction of the Receivership Court over receivership property located in the Southern District of Indiana, including the Property, the Receiver on August 20, 2024 commenced a Miscellaneous Action, by filing the SEC's Complaint and Order Appointing Receiver in the U.S. District Court for the Southern District of Indiana. *See* Case No. 1:24-mc-00046-JRS-MKK.

an equitable interest in identifiable property resulting from specific wrongdoing or unjust enrichment).

When a court appoints a receiver, the receiver becomes the exclusive, court-authorized representative empowered to marshal assets and assert the legal and equitable interests of the parties for whose benefit the receiver is serving, including defrauded investors whose funds were misappropriated.  In that fiduciary capacity, as discussed further below, the Receiver has standing to assert and seek recognition or enforcement of a constructive trust over property acquired with misappropriated funds.  That standing is expressly reinforced by the Receivership Order, which authorizes the Receiver to pursue legal and equitable relief on behalf of the Receivership Estate, including "the imposition of constructive trusts."  *See* Receiver's Declaration, Ex. B (Doc. 93-3) at 19.

**B. Legal Bases for Claim to Recover Commissions [POC No. 25], Objection to Confirmation of Debtor's Chapter 13 Plan [Doc. 45], and Adversary Proceeding to Except Debts from Discharge Pursuant to 11 U.S.C. § 523 [Adv. No. 25-50110]**

The Receiver's claims to recover the commissions paid to the Debtor are legally and analytically distinct from his claims to recover the Property.  Unlike the Property (which is subject to constructive trust principles) the commissions constitute avoidable transfers governed by Georgia's Uniform Voidable Transactions Act ("GUVTA"), O.C.G.A. § 18-2-70, *et seq*.  Those claims sound in fraudulent transfer law and seek avoidance and recovery of funds paid by Drive Planning to the Debtor in furtherance of the Ponzi scheme.

As alleged in the Receiver's adversary complaint against the Debtor (Adv. No. 25-50110), Drive Planning paid the Debtor substantial commissions for soliciting and securing investor funds during the operation and in furtherance of a Ponzi scheme. Those payments were made to the Debtor with actual intent to hinder, delay, or defraud creditors and for no reasonably equivalent

Case 25-03768-JMC-13    Doc 95    Filed 02/11/26    EOD 02/11/26 18:28:52    Pg 12 of 28

value. Under GUVTA, transfers made in furtherance of a Ponzi scheme are deemed to have been made with actual intent to defraud as a matter of law. The Debtor's receipt of commissions was directly tied to the solicitation of new investor funds, which perpetuated the scheme and increased Drive Planning's liabilities while dissipating its assets.

At the time the commissions were paid, Drive Planning was insolvent and operating solely through the infusion of new investor funds. The Debtor did not provide reasonably equivalent value in exchange for the commissions because the solicitation and sale of illegal, unregistered securities does not constitute value under Georgia law. Each commission payment increased Drive Planning's insolvency and was made at a time when Drive Planning either intended to incur, or reasonably should have known it would incur, debts beyond its ability to pay.

These fraudulent transfer claims give rise to allowed claims in this bankruptcy case in amounts far exceeding the limits for Chapter 13 eligibility and render the Debtor's proposed plan unconfirmable. The Plan fails to account for the Receiver's claims, does not propose feasible treatment of those claims, and cannot be confirmed where the Debtor seeks to retain the benefits of avoidable transfers while discharging liability arising from fraud.

Accordingly, the Receiver has a valid legal basis to pursue recovery of the commissions under GUVTA, to object to confirmation of the Debtor's Chapter 13 Plan, and to prosecute the pending adversary proceeding seeking to except from discharge the resulting debt.

II. **STANDING AND JURISDICTION: THE RECEIVER HAS STANDING TO ASSERT CLAIMS TO RECOVER THE PROPERTY AND THE COMMISSIONS DEBTOR RECEIVED FROM DRIVE PLANNING, AND THE RECEIVERSHIP COURT HAS EXCLUSIVE JURISDICTION OVER RECEIVERSHIP PROPERTY**

A. **The Receiver Has Standing to Seek Recovery of the Property Pursuant to the Receivership Order**

As explained above, the Receivership Order defines the Receivership Estate and what constitutes Receivership Property as including assets of Drive Planning and assets that "are attributable to funds derived from investors," that "are held in constructive trust," and that otherwise constitute "Recoverable Assets." *See* Receiver's Declaration, Ex. B (Doc. 93-3). Further, under the Receivership Order, the Receiver is specifically charged with "marshaling and preserving all assets" of the Estate and authorized to "sue for and collect, recover, receive and take into possession from third parties all Receivership Property," regardless of how such property is titled or held. *Id.* at 2, 4. The Receivership Order directs the Receiver to identify, take custody of, and recover property in which Drive Planning "owns, possesses, has a beneficial interest in, or controls directly or indirectly," including real property acquired with investor funds. *See id.* Therefore, property purchased with misappropriated Drive Planning investor funds, including the Property, constitute Receivership Property and Recoverable Assets subject to recovery by the Receiver.

Drive Planning investors do not have the authority, under the Receivership Order or applicable law, to recover Receivership Property, and they do not have direct claims against the Debtor to recover such assets of the Receivership Estate. Only the Receiver is granted such authority. As such, the Receiver has standing to pursue recovery of the Property by seeking the imposition of a constructive trust over the Property in favor of the Receivership Estate for the benefit of the defrauded investors whose funds were used to purchase it.

10

Drive Planning investors have no standing to assert a constructive trust over the Property because it was purchased with funds transferred directly from Drive Planning rather than from the investors.  Once the investors transferred money to Drive Planning for investment in its real estate or tax lien scheme, they became tort creditors of Drive Planning with claims *against Drive Planning* (not owners of the funds they transferred to Drive Planning or holders of claims to recover assets that Drive Planning acquired with such funds).  *See Wiand v. Lee*, 753 F.3d 1194, 1202 (11th Cir. 2014) (explaining that once investors transfer funds to an investment entity, they hold only creditor claims against the entity and do not retain ownership interests in the specific funds or assets later acquired with those funds).  While the ultimate purpose of the Receiver's claim to recover the Property is to help satisfy investor claims against Drive Planning (and the Receivership Estate), only the Receiver has standing to recover the Property.

**B. The Receiver Has Standing to Pursue Fraudulent Transfer and Unjust Enrichment Claims Against the Debtor Because He Is Not Asserting Claims on Behalf of Investors, but on Behalf of the Drive Planning Receivership Estate, as a Creditor of Drive Planning, Which Made the Transfers to the Debtor.**

A receiver has standing to pursue state law fraudulent transfer claims because the receiver represents the legal interests of the entities in receivership, which are distinct from the interests of individual investors.  *See Wiand v. Lee*, 753 F.3d 1194, 1202 (11th Cir. 2014) ("[a] receiver of entities used to perpetrate a Ponzi scheme does not have standing to sue on behalf of the defrauded investors but does have standing to sue on behalf of the corporations that were injured by the Ponzi scheme operator").  Even though the entities involved in the Ponzi scheme were used as tools by the schemer, they are still considered separate legal entities with their own rights and duties.  *See id*.  These entities are harmed when their assets are diverted for unauthorized purposes, such as perpetuating the Ponzi scheme, rather than being used for their stated purpose, such as investing on behalf of investors.  *See id.*

11

Once a receiver is appointed, the entities in receivership are no longer under the "evil zombie" control of the Ponzi schemer, but are "freed from his spell," and are entitled to recover assets that were improperly transferred from the entities. *See id.* at 1201-1203, *citing Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) (determining that the receiver had standing to pursue fraudulent conveyance claims under the predecessor of Illinois's Uniform Fraudulent Transfer Act on behalf of the corporations in receivership, which were "entitled to the return of the moneys – for the benefit not of [the scheme operator] but of innocent investors – that the [scheme operator] had made the corporations divert to unauthorized purposes"); *see also Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1310 (11th Cir. 2024) (finding that receiver had standing to maintain fraudulent-transfer claims against brokers because those transfers injured the receivership corporate entities).

Here, Drive Planning was harmed when Mr. Burkhalter transferred Drive Planning's funds to pay commissions to the Debtor to bring investors into the Ponzi scheme. *See Wiand v. ATC Brokers Ltd.*, 96 F.4th at 1308. This misappropriation and depletion of Drive Planning's funds constituted a direct injury to the receivership entity and therefore provides the Receiver with standing to seek to recover those funds as fraudulent transfers and unjust enrichment to the Debtor. *See id.*

In *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296 (11th Cir. 2020), the receiver attempted to bring tort and fraudulent transfer claims based on harm suffered by investors in a Ponzi scheme. The *Isaiah* court held that the receiver lacked standing to pursue third-party tort claims because they belonged directly to the investors, but held that receivers may bring claims of the receivership entity, like the claim asserted here, where the entity itself has been harmed or wrongfully stripped of its assets. 960 F.3d at 1306. In *Wiand v. ATC Brokers*, the Eleventh Circuit noted that "tort and fraudulent-transfer claims must be treated differently for standing purposes:

fraudulent transfers are 'cleansed through receivership' as a matter of course, but common-law torts by third parties are not." *See* 96 F.4th 1303, 1310 (citing *Isaiah*, 960 F.3d at 1306) (finding that *Isaiah's* ruling as to lack of standing of a receiver is <u>limited</u> to common-law claims for negligence and aiding and abetting, but the receiver has standing to maintain fraudulent-transfer claims). In fact, the *Isaiah* court agreed that a corporation is harmed when its assets are transferred for an unauthorized purpose to the detriment of investors, and a receiver may bring claims to recover those assets on behalf of the corporation in receivership. *See Isaiah*, 960 F.3d at 1306.

## C. The Receivership Court Has Jurisdiction Over the Property.

The Receivership Court retains exclusive jurisdiction over Receivership Property and Recoverable Assets wherever located, and its jurisdiction extends nationwide under 28 U.S.C. §§ 754 and 1692 and the Receivership Order.

The Receivership Court has jurisdiction and control over all real property of the Receivership Estate, including the Property purchased with Drive Planning funds, located in the Southern District of Indiana, pursuant to 28 U.S.C. §§ 754 and 1692. "A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof." 28 U.S.C. § 754; *see also SEC v. Bilzerian*, 378 F.3d 1100, 1104 (D.C. Cir. 2004) (Section 754 extends "the territorial jurisdiction of the appointing court. . . to any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754.") (*citing Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823 (6th Cir. 1981)). To establish such jurisdiction, the Receiver must "within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in

13

the district court for each district in which property is located." 28 U.S.C. § 754. The Receiver

complied with 28 U.S.C. § 754 by filing a copy of the SEC's Complaint and the Receivership

Order in the Southern District of Indiana within ten days of the entry of the Receivership Order.

*See* S.D. Ind. Case No. 1:24-mc-00046-JRS-MKK at Doc. 1 ("S.D. Ind. 754 Action").

When 28 U.S.C. § 754 applies, its companion statute, 28 U.S.C. § 1692, is triggered.

Section 1692 effectively expands the territorial jurisdiction of the court that appoints the receiver

to any district in the United States where property believed to be that of the receivership estate is

found, provided that the proper documents have been filed in each such district as required by §

754. *See* 28 U.S.C. § 1692 ("In proceedings in a district court where a receiver is appointed for

property, real, personal, or mixed, situated in different districts, process may issue and be executed

in any such district as if the property lay wholly within one district, but orders affecting the

property shall be entered of record in each of such districts."); *see also Bilzerian*, 378 F.3d at 1104

(finding that personal jurisdiction is established by the nationwide service of process authorized in

receivership proceedings by 28 U.S.C. § 1692, under which "[t]he appointment court's process

extends to any judicial district where receivership property is found." (*quoting Haile*, 657 F.2d at

826)).

Therefore, because the Receiver filed the Receivership Order in the S.D. Ind. 754 Action

and recorded it and a Notice of Lis Pendens as to the Property in the county in which the Property

is located, the Georgia Receivership Court has jurisdiction over the Property, pursuant to 28 U.S.C.

§ 1692.

Moreover, the Receivership Court expressly retains exclusive jurisdiction and possession

over all Receivership Property and Recoverable Assets, "of whatever kind and wherever situated,"

including assets in which the Receivership Estate holds a beneficial or equitable interest. *See*

14

Receiver Declaration, Ex. B (Doc. 93-3) at ¶¶1, 7(A). The Order further enjoins all persons and courts from "interfering in any manner with the exclusive jurisdiction of this Court over the Receivership Estates." *See id.* at ¶29(D). Because the Property was acquired through the fraudulent misappropriation of Drive Planning investor funds and is subject to a pre-receivership constructive trust, it constitutes Receivership Property as defined in the Receivership Order and, as such, is under the exclusive jurisdiction of the Receivership Court.

### III.  <u>THE DEBTOR'S BANKRUPTCY FILING HAS NO IMPACT ON THE RECEIVER'S CONSTRUCTIVE TRUST REMEDY</u>

Admittedly, there has been much confusion in the caselaw concerning the impact of bankruptcy on the state law remedy of constructive trusts, and the history of this "heated dispute" was thoroughly described by Judge Lorch in *Friona Industries, L.P., et al. v. Eastern Livestock Co., LLC, et al.*, Case No. 10-93904-BHL-11, Adv. Pro No. 11-59093 (Doc. 379 entered on February 10, 2012; unreported opinion) (hereinafter, "*Eastern Livestock*").  As discussed *infra*, *Eastern Livestock* is easily distinguishable from the present case and was decided prior to the Seventh Circuit's important decision in *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299 (7th Cir. 2014), which clarified the law in this area.  Much of the past confusion is due to misconceptions over the term "constructive trust" and a failure to adhere to basic bankruptcy principles regarding the treatment of property interests.

Once these misconceptions are removed, it is clear that Mr. Linarducci and his wife hold bare legal title to the residence because there is a recorded deed in their name; however, they do not own the property because it was purchased for them with fraudulently obtained funds. Although the Linarduccis hold legal title to the Property, the equitable property interest in the Property is not property of the bankruptcy estate.  This division between the Receiver's equitable ownership of the house and the transfer of legal title to the Linarduccis occurred on July 10, 2023,

the date the deed to the Property was recorded, nearly two years before the bankruptcy petition date of June 27, 2025.  Accordingly, as of the petition date, the Linarduccis' interest was limited to bare legal title, and because the bankruptcy estate succeeds only to the debtor's interests as they existed on the petition date, the equitable interest in the property never became property of the estate.

### A.  It is not disputed that proceeds of the Drive Planning Ponzi scheme were fraudulently diverted to, and are directly traceable to, the Property.

The Receiver incorporates by reference the Receiver's Declaration (Doc. 93-1), including the exhibits attached thereto.  To date, the Debtor has not disputed any of the assertions in the Receiver's Declaration.  As attested to in the Receiver's Declaration, proceeds of the Drive Planning Ponzi scheme were fraudulently diverted to the purchase the Property for the benefit of the Linarduccis.  This fraud occurred on July 10, 2023, nearly two years prior to Mr. Linarducci's bankruptcy petition.

### B.  Summary of Indiana law on constructive trusts.

The Receiver previously briefed Indiana law on constructive trusts (Doc. 78 at 5-8) and will not repeat that discussion here.  However, to summarize, "[c]onstructive trusts are generally imposed *when legal title is gained through wrongful means* (*e.g.*, fraud, duress, undue influence, theft, etc.).  *Presbytery of Ohio Valley, Inc. v. OPC, Inc.*, 973 N.E.2d 1099, 1109 (Ind. App. 2012) (emphasis added).  *See also Geels v. Flottemesch*, 243 N.E.3d 1069, 1070 (Ind. 2024) (same).  The Receiver will return below to the issue of whether it is relevant that a constructive trust is declared by a court before or after the petition date (it is not), but the point here is that nothing in Indiana law alters the fact that, on the date when legal title to property is gained through wrongful means, the victim retains equitable ownership of the property.

In this case, the Linarduccis gained legal title to the Property by wrongful means on July 10, 2023, when Drive Planning used proceeds of a Ponzi scheme to purchase the Property and a deed was recorded in their name. Accordingly, the Linarducci's acquisition of legal title through wrongful means on July 10, 2023 vested equitable ownership in Drive Planning on that date.

### C. Property obtained by fraud does not become property of the bankruptcy estate.

In *In re Teltronics, Ltd.*, 649 F.2d 1236 (7th Cir. 1981), a decision under the prior Bankruptcy Act, the Seventh Circuit was confronted with the competing claims of a bankruptcy trustee and a state court receiver over funds obtained by the debtor, Teltronics, by fraud. In affirming the district court's decision in favor of the receiver, the Seventh Circuit applied the well-settled maxim "that property obtained by fraud of the bankrupt is not part of the bankrupt's estate." 649 F.2d at 1239. This basic principle survived enactment of the Bankruptcy Code. *See, e.g., In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 305 (7th Cir. 2014) (quoting *Teltronics* for the proposition that "[t]he rule that property obtained by fraud is not part of the bankrupt's estate represents the policy that property should remain in the hands of the rightful owners, no matter how legitimate the claims of creditors"); 3 Norton Bankr. L. & Prac. 3d § 61:19 ("property in which the debtor holds only legal title and not an equitable interest becomes property of the estate under Code § 541(a)(1) or (2), but only to the extent of the debtor's interest.").

*Mississippi Valley* was decided two years after Judge Lorch's decision in *Eastern Livestock*, and clarified the Seventh Circuit's view of constructive trusts once bankruptcy is filed. *Mississippi Valley* is distinguishable from the instant matter in several respects, including the fact that a bailment arrangement was at issue (rather than the fraudulent diversion of proceeds of a Ponzi scheme) and the litigation arose in the context of a Chapter 7 trustee's preference claims. Nonetheless, *Mississippi Valley* is an important decision because it properly viewed the treatment

of constructive trusts under the broader, more basic principle that property wrongfully obtained by the bankrupt is not part of the bankruptcy estate.

Importantly, the court in *Mississippi Valley* relied heavily on a 1998 article by Andrew Kull, Restitution in Bankruptcy: Reclamation and Constructive Trust, 72 Am. Bankr. L.J. 265 (1998) (hereinafter, "*Kull*"), 645 F.3d at 304, and expressly disagreed with the Sixth Circuit's decision in *In Re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994) (holding that bankruptcy courts should not recognize the remedy of constructive trusts unless a court had already impressed a constructive trust on the assets prior to the petition date). *See Mississippi Valley*, 645 F.3d at 305-06. Interestingly, Judge Lorch noted in *Eastern Livestock* that Judge Grant had earlier predicted that the Seventh Circuit would follow *Omegas Group*. *See Eastern Livestock* at 12, quoting *In re Nova Tool & Eng. Co.*, 228 B.R. 678, 683 (Bankr. N.D. Ind. 1998). Judge Grant's prediction proved to be wrong.

With respect to the treatment of constructive trusts in bankruptcy, the *Mississippi Valley* court explained as follows:

> The remedy of constructive trust applies to a subset of unjust enrichment: that resulting from the unauthorized or invalid transfer of property. *See Kull* at 287-88. In such cases – for example, transfers effected by conversion, fraud, mistake, coercion, undue influence, or breach of fiduciary duty – the law provides that true ownership of the property never passes from transferor to transferee. Although the transferee… may have actual and even legal possession, ownership remains vested in the transferor, who has a legal right to demand the return of the property. [quotation of *Teltronics* omitted] The term 'constructive trust' describes the legal fiction pursuant to which the transferee holds the property for the benefit of the true owner. It is a trust imposed by law, rather than one created through the voluntary act of the settlor. Just as the assets of a conventional trust do not enter the bankruptcy estate when the bankrupt person is the trustee (citations omitted), the assets of a constructive trust do not either.
>
> The transferee in possession does not own the property anymore than a parking garage owns a customer's car, or a pickpocket owns the wallet he swipes from a purse. Nor does the transferee become the rightful owner of such property by filing a bankruptcy petition. This is the reason assets in a constructive trust are insulated

18

> from the claims of the debtor's general creditors.  (internal citations omitted).  As Justice Black put it, '[t]he Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors.'  *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962).

745 F.3d at 305.

Simply put, the Seventh Circuit recognized that the state court remedy of constructive trusts (in this case, the State of Illinois) is perfectly consistent with the bankruptcy principle that property obtained by fraud does not become property of the bankruptcy estate.  Thus, assuming that the subject of the fraud (whether property or proceeds) may be traced to the debtor, *see* 745 F.3d at 307-08, the remedy of constructive trust is appropriate and does not violate any bankruptcy principles.

### D. *Eastern Livestock* **is easily distinguishable and, to the extent inconsistent with** *Mississippi Valley***, superseded.**

Judge Lorch's decision in *Eastern Livestock* is distinguishable from the instant matter. First, *Eastern Livestock* involved multiple states and numerous sellers of cattle, whose rights were arguably governed by the Uniform Commercial Code.  *Eastern Livestock*, Doc. 379 at 8. Moreover, as noted above, Judge Lorch did not have the benefit of the Seventh Circuit's decision in *Mississippi Valley*, and he instead relied heavily on the Sixth Circuit's decision in *Omegas Group*, a decision later rejected by the Seventh Circuit.  *Id.* at 8, 11-14.  There were also serious tracing obstacles in *Eastern Livestock*, as numerous sellers were competing for limited sale proceeds that had been interpleaded into court.  *Id.* at 4.

In contrast, the Receiver here is seeking to recover legal title and possession of a specific property obtained by the Linarduccis as a result of fraud, there is no tracing issue, and the Seventh Circuit has approved the state law remedy of constructive trust notwithstanding a bankruptcy filing.  Indeed, the Receiver identified a wire transfer on July 10, 2023, in the amount of

19

$1,920,535.75 from Drive Planning's account holding funds derived from investors to Title Services, LLC. Those funds were used to purchase the Property, and the title to the property was transferred to Gerardo Linarducci and Jennifer Linarducci. Drive Planning had obtained those funds through fraudulent means and misappropriated them for the personal use of Mr. Linarducci. *See* Receiver's Declaration, (Doc. 93-1) at ¶¶ 9-12. The facts here supporting the remedy of constructive trust are much stronger than the facts in either *Mississippi Valley* or *Easter Livestock*.

### E.  It is irrelevant whether an order recognizing that the Property is held in constructive trust is entered before or after the petition date.

Once it is understood that a constructive trust is merely a remedy (basically a declaratory judgment) to recover legal title and possession to property wrongfully obtained by the transferee, it becomes obvious that the timing of such an order – whether entered before or after a bankruptcy petition – is irrelevant. The Seventh Circuit itself recognized in *Mississippi Valley* that the timing of a constructive trust order is irrelevant, unless the applicable state law "calls for such a result." 745 F.3d. at 306. Nothing in applicable Indiana law calls for such a result. As discussed above, the separation of legal title from equitable ownership of the property occurs at the moment that the fraud takes place, and property acquired by fraud does not become property of the estate. *See Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990) (*quoting Beecher v. City of Terre Haute*, 235 Ind. 180, 184-85, 132 N.E.2d 141, 143 (1956)) (finding that constructive fraud "arises by operation of law from a course of conduct which, if sanctioned by law, would 'secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud.'"). Said otherwise, with or without a court order imposing a constructive trust, the Linarducci bankruptcy estate does not own the equitable interest in the Property. Entry of a constructive trust order merely reunites legal title (which has zero value in the bankruptcy estate) with the Receiver's equitable property interest in the Property.

20

Professor Kull, in a thorough analysis, totally debunks the contention that timing of a constructive trust order has any relevance in bankruptcy, properly treating the issue as a red herring.  Professor Kull addresses the issue as follows:

> Constructive trust is indeed a remedy, so there is a sense in which we could say – if it mattered, which it doesn't – that a constructive trust, like an award of damages, does not 'exist' until it is judicially declared.  Such an approach, however, ignores the wrong that the remedy search to redress.  When a court 'impresses' a constructive trust, just as when it gives an award of damages, it passes judgment on a pre-existing legal contest:  in this case, a dispute over competing rights to specific property.  A decree that certain assets are held in constructive trust for the benefit of a claimant means that, in the judgment of the court, the claimant has a right of ownership in those assets superior to that of the person with possession and legal title.  The claimant's property right necessarily antedates its judicial acknowledgment, in the same way that the entitlement to damages precedes their calculation.

> 'Constructive trust' is a declaratory judgment about property out of place.  The necessary condition of constructive trusts, and the legal wrong to which the remedy responds, is that ownership, possession, and title to property have been improperly separated.  The restitution claimant complains of an involuntary transfer, typically one resulting from fraud, mistake or coercion: a transfer, in short, that is legally insufficient to bring about a conclusive alteration of property rights.  While such a transfer conveys possession and imperfect legal title, alias 'voidable title,' the involuntary transferor retains residual rights in the asset.  If the retained rights needs a name, they can be called 'equitable ownership,' or 'inequitable interest,' or simply 'in equity.'  Property rights of this character are asserted by means of a claim in restitution.

*Kull*, 72 Am. Bankr. L.J. 265, 286-290 (1998).

In a 2014 article, Professor Bruce Markell noted that Professor Kull is the reporter for the Restatement (Third) of Restitution and Unjust Enrichment (2011) (the "R3RUE"), and he calls the R3RUE "the go-to source" for the law in this area, including constructive trusts.  *See* Markell, Bruce A., Trust Me: Restitution, Constructive Trust and Mississippi Valley Livestock, 34 No. 5 Bankruptcy Law Letter (May 2024) at 6.

Official comment *e.* to § 55 of the R3RUE answers the question of "when does a constructive trust come into existence" as follows:

21

> The question is artificial, because it implies that the term 'constructive trust' describes a legal relationship that is either created or decreed; when in fact the words are no more than a judicial shorthand describing parties' pre-existing interests in particular property.
>
> ….
>
> The answer to the question posed, therefore, is that the constructive trust 'exists' from the moment of the transaction on which restitution is based; or (if the court prefers) that the constructive trust arises on the date of judgment, but that the state of title it describes 'relates back' to the transaction between the parties. The practical consequence is that the ownership rights of the constructive trust beneficiary, once recognized, are protected from the moment the trustee acquires legal title.

R3RUE § 55 Constructive Trust, official com. *e. See also* Reporter's Note *e.* to § 55 of the R3RUE (noting that the better authorities are to the effect that there is no basis whatsoever for the position that a constructive trust does not arise until it is decreed by a court).[5]

### F.  The Receiver's ownership interest in the house is not avoidable under 11 U.S.C. § 544(a)(3).

Profession Kull also argues persuasively that the trustee's strongarm powers under § 544(a) of the Bankruptcy Code do not allow a trustee to avoid and recover an equitable property interest held in constructive trust. 72 Am. Bankr. L.J. at 292-296. However, it is acknowledged that Judge Easterbrook took a different view in *Belisle v. Plunkett*, 877 F.2d 512, 513-16 (7th Cir. 1989). In any event, this issue is academic in this case because the Receiver recorded a Notice of Lis Pendens against the residence in the Marion County Recorder's Office on October 4, 2024, and a copy of the Notice is attached hereto as **Exhibit A**. As a result, there can be no hypothetical bona fide purchaser that takes free and clear of the Receiver's equitable ownership of the residence.

---

[5] Consistent with this analysis, the prior orders of the Georgia Receivership Court imposing the remedy of constructive trust in similar circumstances mandate that the remedy "relat[es] back to the moment of acquisition of the … Property by [the party with bare legal title]." *See* Debtor's Brief in Opposition to the Receiver's Motion for Relief from Stay (Doc. 80) at 4 (quoting the prior Receiver Court orders).

**G.  Conclusion.**

In response to the question of what impact, if any, Mr. Linarducci's bankruptcy petition has on the Receiver's ownership interest in the house (and the Receiver's right to recover legal title and possession through the remedy of constructive trust), the answer is:  *None*, other than the Receiver requires stay relief to seek entry of an order from the Receivership Court confirming the imposition of a constructive trust on the Property and directing the transfer to Receiver of legal title and possession of the Property so it can be liquidated and the proceeds can be deposited into the Receiver's fiduciary account for the Receivership Estate.  Aside from the automatic stay, Mr. Linarducci's bankruptcy filing has no impact on the rights and property interest held by the Receiver as of the petition date.  As such, the Receiver's stay relief motion should be granted, and the Receiver should be permitted to resume adjudication of his constructive trust motion in the Receivership Court.

Respectfully submitted,

*/s/ James P. Moloy*

James P. Moloy
Attorney No. 10301-49
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 684-5000
Facsimile: (317) 684-5173
jmoloy@boselaw.com

Adriana M. Pavon
Florida Attorney No. 1025060
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, FL  33131
apavon@dvcattorneys.com
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

*Attorneys for Kenneth D. Murena, Receiver*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2026, a copy of the foregoing Brief was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

David Baddley
baddleyd@sec.gov

Amanda Clark Palmer
aclark@gsllaw.com

Ann M. DeLaney
ECFdelaney@trustee13.com
ecfdelaney@gmail.com

Ross M. Good
ross@thegoodlawgroup.com
ross.thegoodlawgroup.com@recap.email

Shawn Matthew Good
info@thegoodlawgroup.com

Harley K. Means
hkm@kgrlaw.com
kwhigham@kgrlaw.com
cjs@jgrlaw.com
kpeerman@kgrlaw.com
tfroelich@kgrlaw.com

Jason T. Mizzell
jmizzell@kgrlaw.com
kwhigham@kgrlaw.com
cjs@kgrlaw.com
kpeerman@kgrlaw.com
tfroelich@kgrlaw.com

Ryan Murphy
RMurphy@kgrlaw.com
kwhigham@kgrlaw.com
cresler@kgrlaw.com
kpeerman@kgrlaw.com
dg@kgrlaw.com
sharding@kgrlaw.com

Adriana M. Pavon
apavon@dvcattorneys.com
jserna@dvllp.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

/s/ James P. Moloy
James P. Moloy