UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
Indianapolis Division

In re:

Gerardo Lorenzo Linarducci,                           Case No. 25-03768-JMC-13

                                                      Chapter 13

                        Debtor.

                                                      **Status Hrg: Mar. 25, 2026 @ 10:00 a.m.**

_____/

**U.S. SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE TO DEBTOR'S MOTION TO APPEAR AND SHOW CAUSE FOR
WILLFUL VIOLATION OF THE AUTOMATIC STAY**

The U.S. Securities and Exchange Commission ("**SEC**") files this response to the *Motion to Appear and Show Cause as to Why the United States Securities and Exchange Commission Should Not be Held in Contempt for a Willful Violation of the Automatic Stay* (ECF No. 96, the "**Motion**") filed by the Debtor, Gerardo Lorenzo Linarducci.  The Motion should be denied because the SEC's enforcement action against the Debtor is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4).

**INTRODUCTION**

1.      The SEC's interest in the Debtor stems from his alleged involvement in a $300 million Ponzi scheme defrauding more than 2,000 investors.  The SEC contends that the Debtor personally sold more than $13 million in fraudulent investments and recruited and oversaw a sales team that sold investors an additional $30 million in fraudulent investments.  In total, the Debtor earned roughly $7.5 million in commissions and compensation from the scheme between 2022 and 2024.  During the SEC's pre-suit investigation, the Debtor invoked his Fifth

Amendment privilege against self-incrimination and refused to answer any questions related to the investment program.

2. On December 19, 2025, the SEC filed a civil enforcement action against the Debtor in federal court. The SEC contends, among other things, that the Debtor made material misrepresentations, and failed to disclose material information, to investors in violation of the antifraud provisions of the federal securities laws. The SEC seeks various forms of relief, including permanent injunctions, entry of an order requiring the Debtor to disgorge ill-gotten gains with prejudgment interest, and the imposition of civil penalties.

3. In the Motion, the Debtor asserts that the SEC's mere filing of the enforcement action violates the automatic stay. But the SEC's action falls squarely within the police-powers exception to the automatic stay, which allows the government to file post-petition law enforcement actions and obtain judgments, including monetary judgments, against a bankrupt debtor. Indeed, every court that has considered the issue has concluded that the SEC is not stayed by a bankruptcy filing from pursuing federal court actions for injunctive or monetary relief. Only the enforcement of a money judgment is stayed.

4. Instead of citing the SEC cases that are directly on point, the Debtor relies on cases where the government's action involved the enforcement of a money judgment outside of the bankruptcy process to gain an advantage over the debtor's other creditors. But that is not what the SEC is doing here. The SEC presently has no monetary judgment to enforce, and further, has filed a Proof of Claim in the Debtor's bankruptcy to receive distributions (on par with the Debtor's other creditors) for any disgorgement that may be ordered, or penalty that may be imposed, by the district court. Thus, the Debtor's assertions, that the SEC is seeking an advantage over other creditors or attempting to control estate property, are simply untrue.

2

5.      The Debtor is not entitled to the entry of an order to show cause because he has failed to meet his burden of proving that a stay violation has occurred.  The Debtor concedes that the SEC's case is an action by a governmental unit to enforce the SEC's police and regulatory powers.  His argument is only that a portion of the requested relief – the entry of an order of disgorgement and imposition of civil penalties – is stayed.  But as noted, the SEC is not barred from seeking the entry of monetary relief against the Debtor for violations of the federal securities laws.  In any event, the Debtor fails to explain how including monetary relief in an otherwise lawful enforcement action has caused him harm.  For these reasons, the Motion should be denied.

## JURISDICTION

6.      This Court has concurrent jurisdiction with the U.S. District Court for the Northern District of Georgia (the "**District Court**") to determine whether the SEC's law enforcement action is subject to the automatic stay. *BioConvergence LLC v. Attariwala*, No. 19-cv-01745, 2020 WL 1915269, at *2 (S.D. Ind. Apr. 20, 2020); *SEC v. Wolfson*, 309 B.R. 612, 617 (D. Utah 2004).

7.      The SEC does not consent to the entry of a final order or judgment by the bankruptcy court if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL BACKGROUND

### A.      The SEC's Civil Enforcement Action

8.      The SEC is the federal agency charged with regulating the securities markets and enforcing the federal securities laws.

9. On December 19, 2025, the SEC filed a civil enforcement action (the "**Civil Action**") against the Debtor and one other individual in the U.S. District Court for the Northern District of Georgia. *U.S. Securities and Exchange Commission v. Bradford, et al.*, Case No. 1:25-cv-07284-VMC (N.D. Ga.). A copy of the SEC's complaint filed in the Civil Action (the "**Complaint**") is attached to the Motion as Exhibit A.

10. In the Complaint, the SEC alleges that Drive Planning, LLC sold unregistered securities to investors, which promised 10% returns every three months. (Complaint at ¶1). As of August 2024, over 2,000 investors invested more than $300 million in Drive Planning. (*Id.* at ¶2). Drive Planning did not generate significant profits and the company used most of the investor funds to pay fictitious (Ponzi) returns to other investors, to support the extravagant lifestyle of Drive Planning insiders, and to pay millions of dollars in compensation to the sales agents who sold the fraudulent securities to investors. (*Id.* at ¶7).

11. The SEC alleges that the Debtor was a managing partner of Drive Planning and the head of its Indiana branch office. (*Id.* at ¶3). The Debtor sold investments directly to investors, managed a team of sales agents who also sold the investment, appeared in videos and social media posts promoting the investment, and conducted training sessions for sales agents to boost the sale of securities. (*Id.* at ¶4). From July 2022 until June 2024, the Debtor sold more than $13 million in investments, and his sales team sold more than $30 million, earning the Debtor roughly $7.5 million in compensation and commissions. (*Id.* at ¶¶8-9, 49).

12. The SEC alleges that the Debtor defrauded investors by intentionally and/or recklessly misrepresenting the Drive Planning investment. Among other things, the Debtor falsely told investors that their funds would be secured and fully protected by millions of dollars in cash and real estate owned by Drive Planning. (*Id.* at ¶68).

13.     The SEC alleges that as early as the Spring of 2023, the Debtor became concerned about the legitimacy of the investment. (*Id.* at ¶76).  In June 2023, after a sales agent expressed concern to the Debtor and sought to confirm the viability of Drive Planning's financials, the Debtor agreed, responding by text message, "the s#$% could be hitting the fan as we speak.  We really need to get this all taken care of." (*Id.* at ¶¶77-78).  One week later, a sales agent expressed concern that others might view Drive Planning as operating a Ponzi scheme, but the Debtor instructed the agent to "shut them up and close the deal." (*Id.* at ¶79).  The Debtor even warned an agent to stop using the words "investment" and "guarantee" because "[i]t is only a matter of time before YOU open an[]SEC/FINRA case.  That will be the end of Drive Planning." (*Id.* at ¶86).  The Debtor nevertheless continued selling investments (and collecting commissions) for another year without sharing his valid concerns with investors. (*Id.* at ¶90).[1]

14.     During the SEC's pre-suit investigation, the Debtor asserted his Fifth Amendment privilege against self-incrimination and refused to answer any questions about the Drive Planning investments. (*Id.* at ¶22).

15.     The SEC alleges that after Drive Planning ceased operations, the Debtor sought to involve some of his former colleagues in a new venture that would include financial advice and private placements. (*Id.* at ¶23).

16.     In the Complaint, the SEC charged the Debtor with violating the antifraud provisions of the federal securities laws [Sections 17(a)(1)-(3) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 (and Rule 10b-5 thereunder)], aiding and abetting fraud, engaging in the offer and sale of unregistered securities, and offering and selling

---

[1]   The Complaint also identifies additional warnings that the Debtor received in 2024 about Drive Planning being a Ponzi scheme (including knowledge of the SEC's investigation into Drive Planning), none of which caused him to stop soliciting more investments. (Complaint at ¶¶91-99).

securities as an unregistered broker.  The Complaint seeks various forms of relief, including permanent injunctions, entry of an order requiring disgorgement of ill-gotten gains, and the imposition of civil penalties.

### B.        The Debtor's Bankruptcy and Claimed Stay Violation

17.        The Debtor commenced this case by filing a voluntary Chapter 13 petition on June 27, 2025.  The Debtor listed in his bankruptcy schedules certain individuals who purportedly invested in Drive Planning, describing the nature of their claims as "alleged non-consumer debt."  The Debtor also scheduled the SEC as a creditor, holding claims for "any and all potential liability from alleged non-consumer debt." (ECF No. 1 at p.30).  In a subsequent court filing, the Debtor acknowledged that there may be as many as 2,500 Drive Planning investors who also "may be considered contingent, unliquidated and disputed unsecured creditors of the Debtor's bankruptcy estate." (ECF No. 8 at ¶4).

18.        On December 22, 2025 (three days after filing the Civil Action), the SEC filed a Proof of Claim (Claim No. 39) in the Debtor's bankruptcy case.  The SEC attached a copy of the Complaint to its Proof of Claim.  The SEC also attached a claim summary, which stated that the SEC's claim was for "disgorgement, prejudgment interest and civil penalties, in amounts to be determined in [the Civil Action]."  The summary also noted that the Civil Action was being pursued within the scope of the police-powers exception set forth in Section 362(b)(4) of the Bankruptcy Code, and further, that even though no monetary relief had yet been set in the Civil Action, the SEC reserved its right to amend and supplement the claim.

19.        On February 16, 2026, the Debtor filed his Motion seeking an order to show cause, claiming that the monetary claims in the Civil Action violate the automatic stay.  The Debtor argues that the Civil Action is not excepted from the automatic stay under the police-

6

powers exception because that exception does not allow the government to fix monetary claims in non-bankruptcy enforcement proceedings.

## LEGAL DISCUSSION

**A.      It is Well Settled that the SEC May Seek the Entry of Monetary Judgments Against Debtors in District Court.**

20.      The question of whether SEC enforcement actions fall within the police-powers exception is well settled.  In at least a dozen cases (most of which SEC counsel provided to Debtor's counsel months before the Motion was filed), courts have uniformly held that the police-powers exception allows the SEC to seek remedies (including monetary remedies) for violations of the federal securities laws.[2]  The only act that is not excepted (and thus, remains stayed) is the enforcement of a money judgment.  The Debtor fails to cite or discuss any of these cases in his Motion or argue why his case should be treated differently from established precedent.[3]

---

[2]  *SEC v. Miller*, 808 F.3d 623, 631 (2d Cir. 2015); *SEC v, First Financial Group of Texas, et al.*, 645 F.2d 429, 437 (5th Cir. 1981); *SEC v. Morriss*, No. 12-cv-80, 2012 WL 2154903, at *2-3 (D. Mo. June 13, 2012) ("A proceeding such as this action 'that seeks to curb certain behavior, such as defrauding investors, by imposing financial liability or seeking an injunction, is one that enforces the government's police or regulatory power and serves to protect public health and safety.'")(*quoting SEC v. Friedlander*, No. 01-Civ-4658, 2002 WL 1628832 (S.D.N.Y. July 23, 2002)); *SEC v. Bluestein*, No. 09-13809, 2011 WL 4043125, at *1 (E.D. Mich. Sept 12, 2011); *SEC v. Applegate*, No. 05-CV-2363, 2006 WL 1005302, at *1 (N.D. Ohio Apr. 13, 2006); *SEC v. Smith*, No. C2-CV-04-739, 2005 WL 2875546, at *2-3 (S.D. Ohio Nov. 2, 2005); *SEC v. Wolfson*, 309 B.R. 612 (D. Utah 2004); *SEC v. Bilzerian*, 131 F.Supp.2d 10, 14 (D. D.C. 2001); *SEC v. Towers Financial Corp. et al.*, 205 B.R. 27 (S.D.N.Y. 1997); *SEC v. Elmas Trading Corp.*, 620 F.Supp. 231, 240-41 (D. Nev. 1985); *In re Wyly*, 526 B.R. 194, 195 (Bankr. N.D. Tex. 2015); *In re Wolf Financial Group, Inc.*, No. 94-B-44009, 1994 WL 913278, at *7 (Bankr. S.D.N.Y. Dec. 15, 1994); *In re Bilzerian*, 146 B.R. 871, 873 (Bankr. M.D. Fla. 1992).

[3]  The only SEC case that Debtor cites in his Motion is *SEC v. Brennan*, 230 F.3d 65 (2d Cir. 2000).  Debtor cites *Brennan* for the basic proposition that the police-powers exception "is to be narrowly construed and should not interfere with the property of the estate." (Motion at ¶24).  *Brennan*, however, makes clear that the SEC's action is not stayed under the police-powers exception up to the entry of a money judgment:

> "When the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity – it is attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by making the behavior that much more expensive.  It is this added expense that deters a party from defrauding or polluting – not the identity of the entity which it must eventually pay.  Accordingly, up to the moment when liability is definitively fixed by entry of judgment, the government is acting in its police or regulatory capacity – in the public interest, it is burdening certain conduct so as to deter it.  However, once liability is fixed and a money judgment has been entered, the

21.     One of the early cases applying the police-powers exception to an SEC action is *SEC v. Bilzerian*.  In that case, the SEC filed a civil action charging Bilzerian with securities law violations and seeking injunctive relief and disgorgement of ill-gotten gains. *Bilzerian*, 146 B.R. at 872.  The district court granted the SEC partial summary judgment and entered a permanent injunction against Bilzerian, leaving for determination only the amount that he must disgorge. *Id.* Before that could happen, Bilzerian filed Chapter 11 and argued that the SEC was stayed from taking further action in district court because the SEC was seeking only to impose personal liability for a prepetition claim. *Id.* at 873.

22.     The bankruptcy court disagreed with Bilzerian and ruled that the SEC's pursuit of disgorgement fell within the police-powers exception to the automatic stay.  The court quoted the statute's legislative history, which states that the police-powers exception permits the government to "fix damages for violation of" police and regulatory laws. *Id.*  The court explained that a disgorgement order is designed "to prevent those such as the Debtor from repeatedly violating the securities laws," and thus, "disgorgement is a remedy sought by the SEC in furtherance of its police powers under the Securities Laws." *Id.*  Accordingly, the court held that the police-powers exception allowed the entry of a disgorgement judgment; only enforcement of the judgment would be stayed. *Id.*

23.     Two years later, in *Wolf Financial*, the bankruptcy court ruled that the SEC's action against the debtor, seeking injunctions, disgorgement and civil penalties, passed both the pecuniary purpose and public policy tests under the police-powers exception. *Wolf Financial*,

---

government necessarily acts only to vindicate its own interest in collecting its judgment. Except in an indirect and attenuated manner, it is no longer attempting to deter wrongful conduct.  It is therefore no longer acting in its 'police or regulatory' capacity, and the exception to the exception does not apply."

*Brennan*, 230 F.3d at 72-73.

1994 WL 913278, at *7.  The debtor argued that the SEC action had no regulatory purpose because the debtor had withdrawn from the securities industry and the SEC was merely trying to collect money damages for harmed investors. *Id.* at *8.  The court explained, however, that disgorgement and penalties are sought not for the government's own pecuniary interest, but to protect the public by making securities fraud unprofitable. *Id.* at *8-9.  Therefore, the police-powers exception permitted the SEC's case to proceed.

24.     Since these early cases, courts have consistently held that SEC actions for violations of the federal securities laws fall within the police-powers exception to the automatic stay and allow the SEC to seek a wide range of relief. *See Miller*, 808 F.3d at 632 (pre-judgment order freezing debtor's assets who was a relief defendant in SEC action not stayed); *Morriss*, 2012 WL 2154903, at *2 ("A proceeding such as this action 'that seeks to curb certain behavior, such as defrauding investors, by imposing financial liability or seeking an injunction, is one that enforces the government's police or regulatory power and serves to protect public health and safety.'")(*quoting SEC v. Friedlander*, No. 01-Civ-4658, 2002 WL 1628832 (S.D.N.Y. July 23, 2002)); *Bluestein*, 2011 WL 4043125, at *1 (SEC not stayed from seeking entry of permanent injunctions and judgments for disgorgement and civil penalties; only enforcement of money judgment is stayed); *Applegate*, 2006 WL 1005302, at *1 (holding that entry of disgorgement order falls within police-powers exception because it is an equitable remedy sought in furtherance of the SEC's police powers); *Smith*, 2005 WL 2875546, at *3 (action by SEC to set disgorgement and civil penalties for securities law violations excepted from stay); *Wolfson*, 309 B.R. at 619-21 (SEC's motions to hold defendant in contempt for violating asset freeze order and for appointment of a receiver not stayed); *Friedlander*, 2002 WL 1628832, at *2 (SEC not stayed from obtaining judgment for disgorgement and civil penalties); *Bilzerian*, 131 F.Supp.2d at 14

9

(contempt order for failing to provide court-ordered accounting in SEC enforcement action excepted from stay under §362(b)(4)); *Towers Financial*, 205 B.R. at 31 (police-powers exception permits SEC to seek entry of disgorgement judgment); *Wyly*, 526 B.R. at 195 (holding that automatic stay does not enjoin SEC actions for disgorgement against relief defendants).

25.     The "purpose of the governmental unit exception is to prevent a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." *Miller*, 808 F.3d at 631 (internal quotation marks omitted); *Elmas Trading Corp.*, 620 F. Supp. at 240-41 ("The policy behind this 'police or regulatory exception' to the automatic stay is to prevent the bankruptcy court from becoming a haven for wrongdoers."). Here, Section 362(b)(4) authorized the SEC to file the Civil Action against the Debtor and to seek injunctions and monetary remedies. The only act that is not excepted under the police-powers exception is the enforcement of any money judgment that the SEC obtains. Presently, the SEC has no money judgment against the Debtor to enforce, and the SEC has filed a Proof of Claim in the Debtor's bankruptcy to be treated the same as the Debtor's other creditors.

**B.      The Debtor's Authority Fails to Establish that the SEC is Stayed from Seeking the Entry of Monetary Relief.**

26.     The Debtor cites three cases in support of his argument that the SEC's lawsuit to fix monetary claims in the District Court violates the automatic stay. First, the Debtor cites *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc., et al.)*, 762 F.2d 542 (7th Cir. 1985). There, the Illinois Director of Financial Institutions initiated pre-bankruptcy administrative receivership and liquidation proceedings against several dozen entities that, one week later, filed Chapter 11. *Id.* at 544. After the bankruptcy filing, the Director argued that the police-powers exception to the automatic stay permitted the liquidation of the debtors' assets to continue outside of the bankruptcy process. *Id.* at 554. The Seventh Circuit disagreed, holding

that, by vesting control of the debtors' property in the receiver, the liquidation proceedings "directly conflict with the control of the property by the bankruptcy court."[4] *Id.* at 555.  Thus, *Cash Currency* involved the control and liquidation of estate property in a non-bankruptcy forum, not the question of whether the government is stayed from seeking a monetary judgment. But on that point, the legislative history quoted by the Court makes clear that seeking monetary relief is not stayed:

> "Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, ***or attempting to fix damages for violation of such a law***, the action or proceeding is not stayed under the automatic stay."

*Id.* at 554-55 (*quoting* S.Rep. No. 989, 95th Cong., 2d Sess. 52 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5838) (emphasis added)).

27.     Next, the Debtor relies on *In re Mewborn*, 367 B.R. 529 (Bankr. D. N.J. 2006). The *Mewborn* case does not support the Debtor's argument because the governmental action in that case involved the enforcement of a money judgment (a Certificate of Debt) outside of the bankruptcy process by the seizure of post-petition unemployment benefits. *Mewborn*, 367 B.R. at 534.  On the other hand, the *Mewborn* court expressly acknowledged that the police-powers exception "only limits the government's police and regulatory power to enforce a money judgment outside of the bankruptcy.  The government's power to seek entry of a civil penalty

---

[4]  The police-powers exception in effect in 1985 did not except from stay governmental acts to obtain or exercise control over estate property as set forth in Section 362(a)(3).  However, today's version of the statute does except from stay acts described in Section 362(a)(3) – specifically, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. §362(a)(3); §362(b)(4).  As such, at least one court has noted that the revised statute has overruled *Cash Currency* on this point. *In re Automatic Professionals, Inc.*, Case No. 07-B-06720, 2007 WL 1958595, at *5 (Bankr. N.D. Ill., July 3, 2007)(recognizing that 1998 amendments to §362(b)(4) overruled *Cash Currency* to the extent that it held that the government is stayed from seeking to control estate property in police and regulatory actions).

judgment for violations…is not precluded." *Id.* at 533 (*quoting USA v. LTV Steel Co., Inc.*, 269 B.R. 576, 582 (W.D. Pa. 2001)).

28.     Finally, the Debtor cites *In re Ellis*, 66 B.R. 821 (N.D. Ill. 1986) for the proposition that the police-powers exception only applies when the government is acting to stop an active and ongoing fraud. (Motion at ¶22).  In that case, the Illinois Department of Public Aid filed an action in state court to recover the overpayment of public assistance benefits. *Id.* at 822. Applying the pre-1998 version of the police-powers exception, the court noted that the Department could not rely upon the portion of the police-powers exception set forth in Section 362(b)(5)[5] because the Department had filed its action post-bankruptcy. *Id.* at 827.  But the current version of the police-powers exception (set forth entirely in Section 362(b)(4)) expressly allows for the "commencement or continuation" of a police-and-regulatory action by the government, thereby rendering *Ellis* inapplicable.

29.     Further, the portion of *Ellis* that Debtor cites about limiting the police-powers exception only to actions that prevent or stop ongoing violations, has subsequently been rejected by the same court as dicta. In *Emerald Gaming Inc. v. Illinois Gaming Board (In re Emerald Casino, Inc.*), No. 03-CV-05457, 2003 WL 23147946 (N.D. Ill. Dec. 24, 2003), the Northern District of Illinois explained that this portion of *Ellis* was dicta and "contrary to the holding of many courts that have applied section 362(b)(4) in situations where the government proceeding did not 'stop or prevent' fraud or a violation of the law." *Id.* at *6. (*citing In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988)).  By obtaining monetary judgments against violators, the

---

[5]   The prior version of the police-powers exception was codified in Sections 362(b)(4) and 362(b)(5) of the Code. Section 362(b)(4) only excepted governmental actions that could have been commenced before the bankruptcy. *Ellis*, 66 B.R. at 826, fn.5. Section 362(b)(5) only excepted the enforcement of judgments actually obtained by the government prior to the bankruptcy. *Id.* Further, as noted in footnote 4 above, both exceptions only applied to acts described in Sections 362(a)(1) and (a)(2); they did not also except acts (like the current exception) to obtain possession or exercise control over property of the estate, as set forth in Section 362(a)(3).

government pursues a legitimate public purpose by deterring others from committing similar violations. *Emerald Gaming*, 2003 WL 23147946, at *6; *see also Wolf Financial*, 1994 WL 913278 at *8 (police-powers exception applied even though debtor had withdrawn from the securities industry); *Bilzerian*, 146 B.R. at 873 (pursuit of disgorgement proper even though debtor had already been permanently enjoined from violating securities laws). Nothing in Section 362(b)(4) limits the excepted governmental action to those that stop or prevent ongoing fraud.

> **C.    Courts in the Seventh Circuit Allow the Government to Seek Monetary Relief Under the Police-Powers Exception.**

30.    Consistent with the plain text of Section 362(b)(4) and its legislative history, courts in this Circuit routinely hold that the police-powers exception applies even when the government's action seeks monetary relief. *Walsh v. Hibachi Seafood Buffet H&Z, Inc.*, No. 18-cv-1744, 2021 WL 1885954 (N.D. Ill. May 11, 2021) (DOL claim for liquidated damages for violations of minimum wage and overtime laws not stayed); *Solis v. Caro et al.*, No. 11-C-6884, 2012 WL 1230824 (N.D. Ill. Apr. 21, 2012) (government may obtain a determination of monetary damages pursuant to stay exception); *U.S. v. Acme Solvents Reclaiming, Inc.*, 154 B.R. 72, 74 (N.D. Ill. 1993) (rejecting debtor's argument that Section 362(b)(4) is limited to injunctive relief); *In re Pincombe*, 256 B.R. 774, 781 (Bankr. N.D. Ill. 2000) (Section 362(b)(4) permits entry of a money judgment) (*citing Securities and Exchange Comm'n v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000)). And in the analogous state securities law enforcement context, one court held that an administrative proceeding filed post-petition by the Illinois Secretary of State, Department of Securities, seeking a monetary fine for fraud and selling unregistered securities, was excepted under the police-powers exception. *In re Friedman*, 531 B.R. 741 (Bankr. N.D. Ill. 2015).

31. This principle was extended to actions by private persons in *Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993), where the Seventh Circuit held that a proceeding to impose monetary sanctions under Rule 11 is excepted from the automatic stay pursuant to the police-powers exception in Section 362(b)(4). *Id.* at 690.  Even though the sanctions motion was filed by a private person (the defendant in the debtor's frivolous lawsuit), the Seventh Circuit found that §362(b)(4) applied because Rule 11 sanctions are "meted out by a governmental unit." *Id.*  And significantly, the Seventh Circuit explained that "[t]he fact that the sanction is entirely pecuniary does not take it out of section 362(b)(4)." *Id.* (*citing In re Commonwealth Cos.*, 913 F.2d 518, 522-23 (8th Cir. 1990)).

## CONCLUSION

32. The SEC filed the Civil Action to seek redress against the Debtor for violating the federal securities laws.  The filing was excepted from the automatic stay pursuant to the police-powers exception set forth in Section 362(b)(4) of the Bankruptcy Code.  The SEC is not seeking to enforce a money judgment while the stay is in effect and has filed a Proof of Claim in the Debtor's bankruptcy for any monetary relief that the District Court may impose.  Neither the facts nor the law supports the Debtor's argument that the SEC has violated the automatic stay in this case.

WHEREFORE, the U.S. Securities and Exchange Commission respectfully requests the entry of an Order denying the Motion and providing such other relief as the Court deems appropriate.

Dated: March 19, 2026

Respectfully submitted,

_____/s/ David W. Baddley_____
David W. Baddley, Esq.
Bankruptcy Counsel
Appearing Pursuant to Local Rule 9010-3(b)(3)
Tel: (404) 842-7625
Fax: (404) 842-7633
Email: baddleyd@sec.gov

COUNSEL FOR U.S. SECURITIES AND
EXCHANGE COMMISSION
Atlanta Regional Office
950 East Paces Ferry Road, Suite 900
Atlanta, Georgia 30326-1382

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2026, a copy of the foregoing Response was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

| | |
|---|---|
| Amanda Clark Palmer: | aclark@gllaw.com |
| Ann M. DeLaney | ECFdelaney@trustee13.com |
| Ross M. Good: | ross@thegoodlawgroup.com |
| Shawn Matthew Good: | info@thegoodlawgroup.com |
| Harley K. Means: | hkm@kgrlaw.com |
| Jason T. Mizzell: | jmizzell@kgrlaw.com |
| James P. Moloy: | jmoloy@boselaw.com |
| Ryan Murphy: | RMurphy@kgrlaw.com |
| Adriana M. Pavon: | apavon@dvcattorneys.com |
| U.S. Trustee: | ustpregion10.in.ecf@usdoj.gov |

I further certify that on March 19, 2026, a copy of the foregoing Response was mailed by first-class U.S. Mail, postage prepaid and properly addressed to the following:

Gerardo Lorenzo Linarducci
12162 Pearl Bay Ridge
Indianapolis, IN 46236

Harley K. Means
Jason T. Mizzell
Kroger, Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204

                    /s/ David W. Baddley

16